Nott, J.,
dissenting:
I cannot agree to the judgment in this case; for it seems to me to be one of those cases where the parties having made one contract for themselves, courts of law have fallen into the error of making another contract for them.
There is no ambiguity in the terms of this contract. There is no doubt as to the expressed intent of its provisions. A' simpler, plainer contract was never draughted. It bound the surveyors 1 1 to subdivide into sections a ll thatportion of the tract of land twenty miles in width, off the north side of the Osage Indian reserve.,” u ceded to the United States in trust ” u by the treaty ” “ with *469 the Great and Little Osage Indians.” Tbe practical effect of the decision’is to reverse this language, and to hold that the agreement was not to survey “ all that portion of the tract,” but less than half of it.
The special instructions of the Commissioner of the Land-Office may be a part of the contract, but only for the purpose of directing its execution, and not for the purpose of limiting its extent. They were something which followed the contract, and were neither incorporated in, nor annexed to it; nor did they form a provision which the surveyors were directly cognizant of, nor to which they had, in fact, given their assent. If these special instructions had extended over double the amount of territory named in the contract, instead of being restricted to half, could it be claimed by either party that the contract was thereby extended to all the territory that the special instructions embraced'?
The subject-matter of the agreement is equally free from doubt. When the contract was made, the extent of the subject-matter was not ascertained, though ascertainable. But, (which is much to the purpose,) while the contract was still ex-ecutory, and the parties still performing under it, and the breach of the defendants not yet committed, the extent of the subject-matter was ascertained and became known to the parties.
It is said that extrinsic evidence is necessary to determine the extent of the subject-matter. Granted. That is unquestionable. But I apprehend that because extrinsic evidence is necessary to show us what are the dimensions of “ all that portion of the tract of land tioenty miles in ividth off the north side of the Osage Indian reserve,” yet that extrinsic evidence cannot be used to cut “ all of that tract” in two, and remitone-half of it from the operation of the contract. Extrinsic evidence is admitted in such cases to give effect to the provisions of the contract, but is never used to make a new agreement for the parties, nor to contradict the terms nor defeat the expressed intent of the old one.
It is also said that effect should be given to the intent of the parties. That is also unquestionable. But the trouble to my mind is, that an intent here is shown by evidence aliunde the contract, which alters its provisions and contradicts its terms. There is no question as to what was the intent until we let in this evidence; and then the- evidence is used to show an en *470 tirely new intent, contrary to tire intent which the parties themselves expressed in their own agreement.
So far as equity is concerned there is no equity in the case j and equity would leave the parties, should they appeal to it, to the contract which they have made. Equity only interferes to prevent wrong and protect right, in cases where the law is powerless. . If, for example, this contract had been to survey all of the tract for a fixed sum, in gross, and the parties could show that it had been supposed that the tract did not extend beyond the Arkansas River, then equity would reform the contract, to save the surveyors from doing double the intended work for merely the expressed price. But here there was nothing of that kind. The parties knew that the extent of the tract to be surveyed was not fixed, and, knowing that, they contracted for the survey of the whole of it at so much a mile. The Smoot contract not only shows the violation of this one, but it destroys the last pretext for an appeal to equity, by establishing the facts that the defendants wanted the survey made then, and. that the price which they had agreed to pay to these contractors was reasonable.
So far as performance is concerned, the claimants were not in default. They were not at liberty to proceed without special instructions, and no special instructions were furnished to them going west of the Arkansas. They were bound to await such instructions, and would have been entitled to reasonable time for performance after receiving them.
When the Commissioner of the General Land-Office ascertained and fixed the western boundary of the tract, he should have given the claimants Ms special instructions and enabled them to proceed. He should not have violated the agreement by giving to another party another contract to do the same work, at the same time, in the same manner, at a higher price.